FILED

14 MAY -8  AM 8: 07

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KEITH THOMAS,** <br><br> **Petitioner,** <br><br> **vs.** <br><br> **JEFFREY BEARD, Secretary[1]** <br> **Respondent.** | Civil No.      11cv1488-AJB(KSC) <br><br> **REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |

## I.      INTRODUCTION

Petitioner Keith Thomas ("Petitioner"), a state prisoner, has filed a Second Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition"), challenging his conviction in San Diego County Superior Court case number SCD22195 for battery by gassing. (ECF No. 16 (Second Amended Pet. ("Pet." at 2.)[2])  Respondent has filed and Answer. (ECF No. 41 (Mem. of P. & A. Supp.

---

[1]  Matthew Cate, formerly named as Respondent in this case, is no longer the Secretary of the California Department of Corrections and Rehabilitation; rather, Jeffrey Beard has recently been appointed Secretary of that agency.  The Court therefore substitutes "Jeffrey Beard" as Respondent in place of "Matthew Cate."  *See* FED. R. CIV. P. 25(d)(1) ("When a public official is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party.")

[2] Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing system.

1  Answer ("Answer") at 2-11, ECF No. 41-1.)) Petitioner has filed a Traverse and two

2  Supplemental Traverses.  (ECF Nos. 44, 48, 54.)

3      The Court has reviewed the record and has considered the legal arguments

4  presented by both parties.  For the reasons discussed below, it is **RECOMMENDED**

5  that the Second Amended Petition (ECF No. 16) be **DENIED with prejudice.**

6  **II.     FACTUAL BACKGROUND**

7          On July 9, 2009, Sheriff's Deputy John Valente was escorting nurse
   Jennifer Marquez on her daily rounds to administer medications to

8  inmates.  After Deputy Valente unlocked the food flap in [Petitioner's]
   door, [Petitioner] threw two milk cartons full of what appeared to be urine

9  through the flap.  The contents of the first carton hit both individuals, but
   the contents of the second carton hit only Deputy Valente, with some of

10  the urine landing on his exposed arm.

11          Subsequent testing of the clothing worn by Deputy Valente and
   Marquez was inconclusive for the presence of urine, meaning the presence

12  of urine could not be definitely identified or ruled out.  Nonetheless, both
   individuals recognized the urine smell coming from their clothes after the

13  incident, and Marquez described the liquid that pooled on her cart as light
   yellow in color.

14
   [Petitioner], who represented himself at trial, testified in his own

15  defense.  He claimed that he had thrown a single milk carton of water, and
   denied telling an investigator after the incident that he had been keeping

16  a mixture of urine and water in a cup.  On rebuttal, the investigator who
   interviewed [Petitioner] after the incident testified that [Petitioner] told

17  him about saving urine and water in a cup.

18  (Lodgment No. 7 at 2.)

19  **III.    PROCEDURAL BACKGROUND**

20      On January 27, 2010, Petitioner was charged in an amended information with a

21  single count of battery by gassing, in violation of California Penal Code section

22  243.9(a).  (Lodgment No. 1, vol. 1 at 59.)  It was also alleged in the information that

23  Petitioner had served three prior prison terms (Cal. Penal Code §§ 667.5(b), 668), and

24  suffered eight prior strike convictions (Cal. Penal Code §§ 667(b)-(i), 1170.12, and

25  668.)  (*Id.* at 61-62.)

26      On February 1, 2010, a jury found Petitioner guilty of battery by gassing.

27  (Lodgment No. 3, vol. 5 at 459, 461; *see also* Lodgment No. 1, vol. 4 at 53.)  The trial

28  court then found the offense was qualified as a "strike."  The jury found Petitioner had

suffered seven prior strike convictions, and three prison priors. (Lodgment No. 3, vol. 5 at 455-456, 477-80; *see also* Lodgment No. 1, vol. 4 at 554-64.) On March 4, 2010, the trial court sentenced Petitioner to 28 years to life in prison. (Lodgment No. 3, vol. 4 at 512-13; *see also* Lodgment No. 1, vol. 4 at 506-07.)

On June 22, 2010, Petitioner appealed his conviction to the California Court of Appeal, claiming that the trial court had improperly failed to instruct the jury on the lesser-included offense of battery, and that the trial court had incorrectly calculated Petitioner's presentencing custody credits. (Lodgment No. 4.) The conviction was affirmed on November 15, 2010. (Lodgment No. 7.) On December 16, 2010, Petitioner, then representing himself, filed a petition for review in the California Supreme Court in which he argued the trial court had improperly instructed the jury and failed to sua sponte instruct on a lesser-included offense. The court denied the petition on January 19, 2011. (Lodgment Nos. 8 and 9.)

Petitioner filed his initial federal Petition for Writ of Habeas Corpus in this Court on July 1, 2011 (ECF No. 1), and a First Amended Petition on November 11, 2011 (ECF No. 7). Both petitions were dismissed without prejudice and with leave to amend because, among other things, Petitioner failed to adequately allege exhaustion of state judicial remedies. (*See* ECF Nos. 5, 9.)

Meanwhile, on November 4, 2011, Petitioner filed a document entitled "Petition for Writ of Mandamus and Petition for Writ of Error of Coram Nobis" with the California Court of Appeal. (Lodgment No. 10.) The appellate court construed the document as a petition for habeas corpus and denied it on November 21, 2011. (Lodgment No. 11.)

It appears that Petitioner then attempted to appeal the appellate court's denial of his November 4, 2011 petition to the California Supreme Court. On December 7, 2011, the Clerk of the California Supreme Court sent Petitioner a letter, acknowledging receipt of a petition for review, but informing him that it was untimely, and therefore not filed. (Lodgment No. 12.) The court notified Petitioner that he could file an

"application for relief from default," no later than December 21, 2011, seeking leave to file the untimely petition. (*Id.*) January 6, 2012, the California Supreme Court returned Petitioner's December 29, 2011 application for relief from default, unfiled, because it was untimely. The court also returned Petitioner's unfiled petition for review. (*See* Lodgment No. 13.) In the accompanying letter, the Clerk of Court noted that Petitioner could file an original petition for writ of habeas corpus, and a form petition was included with the letter. (*Id.*)

On January 24, 2012, Petitioner filed the instant Second Amended Petition for Writ of Habeas Corpus in this Court. (ECF. No. 16.)[3] On February 6, 2012, this Court notified Petitioner that the Second Amended Petition appeared to contain both exhausted and unexhausted claims. (*See* ECF No. 18.) Petitioner responded by filing a "Motion to Demonstrate Exhaustion," in which he alleged he had raised all claims presented in his Second Amended Petition in a petition for review to the California Supreme Court, but that he had been procedurally barred. (*See* ECF No. 20 at 1-3.) He argued the exhaustion requirement had been met because he had no adequate remedies available to him. (*Id.*) On April 17, 2012, this Court ordered Respondent to file a response to the Second Amended Petition ("Petition or "Pet."). (ECF No. 31.)

Respondent filed an Answer on July 11, 2012. (ECF No. 41.) Petitioner filed a Traverse on August 7, 2012 (ECF No. 44) and a supplemental Traverse on October 10, 2012. (ECF No. 48.) On April 11, 2013, Petitioner filed a "Motion to file a Third Amended Petition." (ECF No. 54). This Court construed that document as a motion to supplement the Traverse, and granted the motion on April 24, 2013. (ECF No. 55.)

/ / /

/ / /

---

[3] Petitioner continued to file documents with the state courts. On February 1, 2012, Petitioner filed a petition for writ of habeas corpus with the San Diego Superior Court. (Lodgment No. 14.) He then filed a petition with the California Court of Appeal on February 2, 1012. (Lodgment No. 15.) The Court of Appeal denied his petition as successive and untimely on February 29, 2012. (Lodgment No. 16.) The San Diego Superior Court denied his petition as untimely on March 14, 2012. (Lodgment No. 17.)

## III.  DISCUSSION

In his Petition, Petitioner raises three grounds[4] for relief: (1) his right to due process was violated when the trial court improperly instructed the jury and failed to instruct on a lesser-included offense; (2) his Fifth Amendment rights were violated when a deputy was permitted to testify as to statements Petitioner made without receiving *Miranda* warning; and (3) his Sixth Amendment rights were violated when he was prevented from calling witnesses to testify on his behalf and prevented from cross-examining a witness who testified against him. Respondent argues that all of Petitioner's claims are unexhausted, that claim one is not cognizable on federal habeas, and that all of Petitioner's claims fail on the merits. (*See generally*, Answer.)

### A.  Exhaustion

Respondent argues Petitioner failed to exhaust state court remedies as to all three claims. Habeas petitioners who wish to challenge either their state court conviction or the length of their confinement in state prison, must first exhaust state judicial remedies. 28 U.S.C. § 2254(b), (c); *Granberry v. Greer*, 481 U.S. 129, 133-34 (1987). Ordinarily, to satisfy the exhaustion requirement, a petitioner must "'fairly present[]' his federal claim to the highest state court with jurisdiction to consider it, or . . . demonstrate[] that no state remedy remains available." *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted). "To provide the State with the necessary 'opportunity,' the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 at 365-366 (1995); *O'Sullivan v. Boerckel*, 526

---

[4] Although Petitioner enumerates six claims in his Petition, only three claims present specific substantive grounds for habeas relief. In ground three, Petitioner argues that claim one (regarding jury instructions) and claim two (regarding *Miranda*) are exhausted. In ground four, Petitioner raises his claims regarding calling and cross-examining witnesses. In grounds five and six, he contends he is entitled to a new trial, and that the state court's denial of the three claims of error raised in the Petition was an unreasonable application of clearly established law under 28 U.S.C. § 2254(d). For the sake of clarity, the Court has renumbered the substantive claims as set forth above, and will address Petitioner's arguments regarding exhaustion and whether he is entitled to habeas relief, as to each claim.

1  U.S. 838, 845 (1999).)   A petitioner may indicate a federal claim by citing the source

2  of federal law upon which he relies, or by merely labeling the claim as "federal."

3  *Baldwin*, 541 U.S. at 32.

4          With regard to Petitioner's jury instruction claim (claim one),Petitioner presents

5  two sub-claims: (a) his due process rights were violated when the trial court failed to

6  modify CALCRIM 2722 to include the term "battery" or "aggravated battery"; and,

7  (b) his due process rights were violated when the trial court failed to sua sponte instruct

8  the jury on the lesser-included offense of battery. (*See* Pet. at 7-11, 27-28, 37.)

9          With regard to sub-claim (a) of claim one, Petitioner argued in his petition for

10 review to the California Supreme Court that he was denied his "constitutional right to

11 have all elements of a criminal offense proved beyond a reasonable doubt" when the

12 trial court refused to modify CALCRIM 2722 to include the term "battery."  Although

13 somewhat inartful, Petitioner appeared to argue that "battery" is an element of the

14 offense under California Penal Code section 243.9. (*See* Lodgment No. 8 at 20.) He

15 then cited two California cases which discuss the federal due process right to have all

16 elements of an offense decided by a jury. (*See id.*, citing *People v. Johnson*, 119 Cal.

17 App. 4th 976 (2004) and *People v. Van Winkle*, 75 Cal. App. 4th 133 (1995)).  Thus,

18 construed liberally, the Court finds Petitioner fairly presented sub-claim (a) of claim

19 one to the California Supreme Court.   *See Castillo v. McFadden*, 399 F.3d 993, 999

20 (9th Cir. 2005)(finding citation to either a federal or state case involving the legal

21 standard for a federal constitutional violation is sufficient to establish exhaustion); *see*

22 *also Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc) ("[F]or

23 purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue

24 serves the same purpose as a citation to a federal case analyzing such an issue.").

25         With regard to sub-claim (b) of claim one, Petitioner argued on direct appeal to

26 the California Court of Appeal that his due process rights under the U.S. Constitution

27 were violated when the trial court failed to instruct the jury on the lesser included

28 offense of simple battery. (*See* Lodgment No. 7 at 15-17.)  In his petition for review

1    to the California Supreme Court, however, Petitioner's claim regarding a lesser-

2    included offense instruction was based entirely on California state law. (*See* Lodgment

3    No. 8 at 11-22.)   This Court has carefully reviewed Petitioner's petition to the

4    California Supreme Court, and nowhere does Petitioner reference the U.S. Constitution,

5    due process, or any federal case or statutory law, generally.   Thus, this Court finds

6    Petitioner failed to fairly present the federal aspect of sub-claim (b) of claim one to the

7    highest state court. *See Baldwin*, 541 U.S. at 32.

8            With respect to ground two, there is no mention of a claim regarding a *Miranda*

9    violation in Petitioner's petition for review to the California Supreme Court.   (*See*

10   *generally*, Lodgment No. 8.)   The claim was therefore not fairly presented to the

11   highest state court.

12           In claim three, Petitioner raises two sub-claims: (a) he was deprived of his Sixth

13   Amendment right to call witnesses to testify in his defense; and, (b) he was deprived

14   of his right to cross-examine Deputy Valente regarding the videotape, in violation of

15   his Sixth Amendment rights.   In his petition for review to the California Supreme

16   Court, Petitioner makes no mention of his claim regarding his Sixth Amendment right

17   to call witnesses. Accordingly, this Court finds Petitioner failed to fairly present claim

18   three sub-claim (a).  *See Baldwin*, 541 U.S. at 32.

19           With regard to sub-claim (b) of claim three, Petitioner very briefly mentioned in

20   his petition for review to the California Supreme Court that he was prevented from

21   cross-examining Deputy Valente about the videotape.   The allegation was presented

22   as part of Petitioner's instructional error argument.  (*See* Lodgment No. 8 at 27.)

23   Petitioner, however, made no reference to the Sixth Amendment, the U.S. Constitution,

24   federal law or federal cases. He stated only that his "substantial rights" were violated.

25   (*Id.*) Petitioner did provide a citation to *Jennings v. Superior Court*, Cal. 2d 867 (1967)

26   and *Alford v. Superior Court*, 29 Cal. App. 3d 724, 728 (1972).  (Lodgment No. 8 at

27   27.)  Both cases discuss the scope of a defendant's right to Sixth Amendment right to

28   cross-examine witnesses at a preliminary hearing. When a petitioner does not label his

1   claim as federal, the mere citation to a state court case that engages in both a state and

2   federal constitutional analysis does not suffice to exhaust the federal claim. *See Casey*

3   *v. Moore*, 386 F.3d 896, 912 n. 13 (9th Cir. 2004)("For a federal issue to be presented

4   by the citation of a state decision dealing with both state and federal issues relevant to

5   the claim, the citation must be accompanied by some clear indication that the case

6   involves federal issues."). Accordingly, this Court finds that Petitioner failed to fairly

7   present sub-claim (b) of claim three to the California Supreme Court.

8          Petitioner argues in his Traverse that he attempted to exhaust all of his claims by

9   filing a petition for review with the California Supreme Court, after his petition for writ

10  of mandamus (which was ultimately construed as a habeas petition) was denied by the

11  California Court of Appeal, on November 21, 2011. (*See* Traverse at 29-30; *see also*

12  Lodgment No. 11.) Petitioner's petition for review was returned to him unfiled on

13  January 3, 2012, because it was untimely.[5] (*See* Lodgment Nos. 12, 13.) Thus, the

14  petition was never filed and as such cannot constitute the basis for exhaustion.

15         After his petition for review was rejected for filing, Petitioner filed petitions for

16  habeas corpus in San Diego Superior Court (Lodgment No. 14) on February 1, 2012,

17  and in the California Court of Appeal on February 2, 2012 (Lodgment No. 15). In both

18  petitions Petitioner argued that his federal due process rights were violated by

19  erroneous jury instructions. There is no mention of Petitioner's other claims. In his

20  Traverse, Petitioner also attaches the first page of a petition for writ of habeas corpus

21  (Case No. S201202) stamped "filed" with the California Supreme Court on March 26,

22  2012. (*See* Traverse at 29.) A review of the California Supreme Court's docket

23  confirms that a petition was filed and subsequently denied September 26, 2012 (over

24  two months *after* Respondent had filed their Answer and Lodgments the instant case),

25  with citation to *In re Clark*, 5 Cal. 4th 750, 797-98 (1993) and *In re Waltreus*, (1965)

26

---

27         [5]   The Clerk of Court notified Petitioner in a letter accompanying the unfiled petition, that
    Petitioner could file a petition for writ of habeas corpus, and included a form petition with the letter.
28  (*See* Lodgment No. 13.)

62 Cal. 2d 218, 225 (1965).[6] Petitioner, however, has not provided the Court with a copy of the petition or any information regarding what claims were raised in the petition, or whether the petition was even related to the conviction challenged in the instant case.

In his Traverse, Petitioner appears to argue that Respondent waived the exhaustion issue when Respondent elected to file an Answer as opposed to a motion to dismiss. (*See* Traverse at 7.) Petitioner points to this Court's Order to Respond which states:

> If Respondents contend the Petition can be decided without the Court's reaching the merits of Petitioner's claims (e.g., because Respondents contend Petitioner has failed to exhaust any state remedies as to any ground for relief alleged in the Petition, or that the Petition is barred by the statute of limitations, or that the Petition is subject to dismissal under Rule 9 of the Rules Governing § 2254 Cases, or that all of the claims are procedurally defaulted, or that Petitioner is not in custody), Respondents shall file a motion to dismiss pursuant to Rule 4 of the Rules Governing § 2254 Cases.

(*See* Order Requiring a Response to Petition, filed April 17, 2012 (ECF No. 31 at 1-2.)) In the same Order, the Court stated that "if Respondent does not contend the Petition can be decided without reaching the merits, Respondent shall file an answer." (*See id.* at 2.) Here, Respondent elected to file an Answer which addressed *both* the merits of Petitioner's claims and his alleged failure to exhaust. This does not constitute waiver of the exhaustion defense. Accordingly, Petitioner has failed to show he fairly presented sub-claim (b) of claim one, claim two and claim three to the California Supreme Court.

However, even where claims have not been presented to the state's highest court, if a petitioner no longer has state court remedies available to him, he has satisfied the technical requirements of exhaustion. *Cassett v. Stewart*, 406 F.3d 614, 621 n. 5 (9th Cir. 2005) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer

---

[6] *See* http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=2009418&doc_no=S201202.

1    'available' to him.") (quoting *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)); *see*

2    *also* 28 U.S.C.A. § 2254(c) ("An applicant shall not be deemed to have exhausted the

3    remedies available in the courts of the State, within the meaning of this section, if he

4    has the right under the law of the State to raise, by any available procedure, the

5    question presented."). In such a situation the claim would likely be procedurally

6    defaulted in this Court. *Coleman*, 501 U.S. at 735 n. 1 (holding that a procedural

7    default arises when a petitioner has "failed to exhaust state remedies and the court to

8    which the petitioner would be required to present his claims in order to meet the

9    exhaustion requirement would now find the claims procedurally barred").

10        Here, based on California's rule barring untimely petitions for post-conviction

11   relief, which the United States Supreme Court has found to be clearly established and

12   consistently applied, it appears that Petitioner no longer has state court remedies

13   available with respect to his federal claims. *See Walker v. Martin*, 562 U.S. –, 131 S.

14   Ct. 1120, 1125-31 (2011) (holding the California's timeliness requirement providing

15   that a prisoner must seek habeas relief without "substantial delay" as "measured from

16   the time the petitioner or counsel knew, or should reasonably have known, of the

17   information offered in support of the claim and the legal basis for the claim," is clearly

18   established and consistently applied)(citing *In re Robbins*, 18 Cal. 4th 770, 805, 77 Cal.

19   Rptr. 2d 153, 959 P.2d 311 (1998) (holding that a habeas claim "that is substantially

20   delayed" will not be considered unless "the petitioner can demonstrate 'good cause' for

21   the delay.")). The Court therefore finds claim one, sub-claim (b), claim two and claim

22   three are technically exhausted. *See Cassett*, 406 F.3d at 621 n. 5.

23        In sum, the Court concludes that Petitioner exhausted sub-claim (a) of claim one

24   by presenting it to the California Supreme Court. Petitioner's remaining claims are

25   technically exhausted because Petitioner no longer has state court remedies available

26   to him.

27   / / /

28   / / /

**B.    Procedural Default**

The Ninth Circuit has held that claims which are "technically exhausted" are procedurally defaulted if the procedural rule that would be imposed is independent and adequate. *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011).

A state procedural rule is "independent" if the state law basis for the decision is not interwoven with federal law. *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983); *Harris v. Reed*, 489 U.S. 255, 265 (1989). A ground is "interwoven" with federal law if the state has made application of the procedural bar dependent on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed. *See Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed'." *Walker v. Martin*, 131 S. Ct. 1120, 1127-28 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 61 (2009)). The Supreme Court has concluded that California's untimeliness rule as expressed in *In re Robbins*, 18 Cal. 4th 770 (1998) is an independent and adequate state procedural rule. *Id.* at 1128-30. Accordingly, the Court concludes Petitioner' "technically exhausted" claims are procedurally defaulted under *Robbins* unless he can establish cause for the default and prejudice resulting from it, or that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Cause is satisfied if Petitioner can demonstrate some "objective factor" that precluded him from raising his claims in state court, such as interference by state officials or constitutionally ineffective counsel. *McClesky*, 499 U.S. 467, 493-94 (1991). Petitioner has not shown how he was precluded from raising his claims in state court. In his Traverse and Second Supplemental Traverse, he appears to argue that he was precluded from filing his December 7, 2011 petition for review because it was rejected as untimely. This does not constitute cause.

In a somewhat convoluted argument in his Second Supplemental Traverse, Petitioner appears to contend that he had been permitted to file an untimely petition for

1   review of his direct appeal and therefore it was arbitrary for the California Supreme
2   Court to reject his untimely December 7, 2011 petition. (*See* Second Supp. Traverse
3   at 30.) Petitioner is incorrect about both the facts and the law. First, under California
4   law, a court of appeal decision regarding a direct appeal of a criminal conviction
5   becomes final 30 days after filing. Cal. R. Ct. 8.264(b); *see also* Cal. R. Ct. 8.366(b).
6   The appellate court denied Petitioner's direct appeal on November 15, 2010 (*see*
7   Lodgment No. 7) and the decision became final on December 15, 2010. Petitioner's
8   petition for review, which was filed on December 16, 2010 (*see* Lodgment No. 8), was
9   therefore timely.  In contrast, a court of appeal decision denying a writ of habeas
10  corpus, when no order to respond was issued, is final upon filing. Cal. R. Ct. 8.387.
11  Therefore, when the appellate court denied Petitioner's November 4, 2011 habeas
12  petition (Lodgment No. 10) on November 21, 2011 (Lodgment No 11), the decision
13  became final on that day. Petitioner then had 10 days (or until December 1, 2011) to
14  file his petition for review. *See* Cal. R. Ct 8.500(e)(1). Because he did not do so until
15  December 7, 2011, it was untimely. There was nothing arbitrary about the application
16  of the California Rules of Court. Furthermore, even if the state court had accepted
17  Petitioner's first petition despite its untimeliness, this does not establish "state
18  interference" in the filing of his later (untimely) petition. Therefore, Petitioner has not
19  established cause for his default. *See McClesky*, 499 U.S. at 493-94.

20      "Prejudice [sufficient to excuse procedurally barred claims] is actual harm
21  resulting from the alleged error." *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir.
22  1998). Petitioner has not shown he suffered any prejudice from the state court's
23  putative refusal to address the merits of his unexhausted claims because, as discussed
24  below in section III(C) of this Report and Recommendation, the claims are without
25  merit.

26      Finally, Petitioner has not demonstrated that failure to consider the claims will
27  result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. The
28  Supreme Court has limited the "miscarriage of justice" exception to petitioners who can

1  show that "a constitutional violation has probably resulted in one who is *actually*

2  innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (emphasis added). "Actual

3  innocence" means factual innocence, not simply legal insufficiency; a mere showing

4  of reasonable doubt is not enough. *See Wood v. Hall*, 130 F.3d 373, 379 (9th Cir.

5  1997). Petitioner has not presented evidence sufficient to establish he is actually and

6  factually innocent of the charges of which he was convicted.

7  The Court therefore finds that although the claims one sub-claim (b), two and

8  three are technically exhausted, they are procedurally defaulted. *See Schlup*, 513 U.S.

9  at 327; *Cooper*, 641 F.3d at 327. In the alternative, they are without merit, as discussed

10  below in section III(C) of this Report and Recommendation.

11  **C.   Merits**

12  In claim one, Petitioner argues that his due process rights were violated when the

13  trial court improperly instructed the jury and failed to instruct on a lesser included

14  offense. In claim two, he contends that his *Miranda* rights were violated when Deputy

15  Alston was permitted to testify about statements Petitioner made to him after the

16  incident. In claim three, Petitioner contends his Sixth Amendment rights were violated

17  when he was denied the opportunity to call witnesses to testify on his behalf, and

18  denied his right to cross-examine a witness.

19  *(1)   Standard of Review*

20  As discussed above, claim one, sub-claim (b) was denied by the California

21  Supreme Court without comment. Because there is no reasoned decision to which this

22  Court may defer, the Court must conduct an independent review of the record to

23  determine whether the state court's decision is contrary to, or an unreasonable

24  application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d

25  976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76);

26  *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). As for claim one, sub-

27  claim (a), because the state *appellate* court reviewed Petitioner's due process claim

28  concerning instruction on a lesser included offense, this Court must determine whether

1  the state court's decision was contrary to, or an unreasonable application of, clearly

2  established Supreme Court law. *See* 28 U.S.C. § 2254(d); *see also Early v. Packer*, 537

3  U.S. 3, 8 (2002).

4      When there is no state court decision to which this Court can defer, those claims

5  must be reviewed *de novo*. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2003)

6  (applying a *de novo* standard of review to such cases). Thus, because no state court has

7  considered the merits of claims two and three, they are reviewed de novo. *Id.*

8          *(2)    Claim One: Jury Instructions*

9      In claim one, Petitioner argues his due process rights were violated when the trial

10  court refused to modify a jury instruction to include the term "battery by gassing" or

11  "aggravated battery." (Pet. at 6-11, 28.) He also contends the trial court failed to

12  instruct the jury on the lesser-included offense of battery, in violation of his due

13  process rights. (*See* Pet. at 28, 37-38.) Respondent argues Petitioner fails to state a

14  cognizable claim, and that claim one fails on the merits. (*See* Answer at 17-18.)

15              a. Legal Standard

16      As a general rule, challenges to jury instructions are questions of state law and

17  it is well established that alleged state law errors are not cognizable in habeas corpus

18  review. *See Estelle v. McGuire*, 502 62, 71-72 (1991); *Pulley v. Harris*, 465 U.S. 37,

19  41(1984); *O'Bremski v. Maass*, 915 F.2d 418, 423 (9th Cir. 1990). Accordingly, to the

20  extent Petitioner argues that the trial court's instructions were erroneous under

21  California law, he fails to state a cognizable claim.

22      Federal habeas relief is warranted only in cases where a petitioner establishes

23  that the ailing instruction by itself "so infected the entire trial that the resulting

24  conviction violates due process." *Estelle*, 502 U.S. at 71-72; *see also Donnelly v.*

25  *DeChristoforo*, 416 U.S. 637, 643 (1974) (explaining that the challenged instruction

26  cannot merely be "undesirable, erroneous, or even 'universally condemned'" it must

27  violate some constitutional right); *Townsend v. Knowles*, 562 F.3d 1200, 1209 (9th Cir.

28  2009). The instruction "may not be judged in artificial isolation," but must be

1  considered in the context of the instructions as a whole and the trial record. *Estelle*,

2  502 U.S. at 71 (citing *Cupp*, 414 U.S. at 147).  In reviewing the instruction, the court

3  inquires "whether there is a reasonable likelihood that the jury has applied the

4  challenged instruction in a way" that violates due process. *Boyde v. California*, 494

5  U.S. 370, 380 (1990).

6        A determination that there is a reasonable likelihood that the jury has applied the

7  challenged instruction in a way that violates the Constitution merely establishes that

8  an error has occurred  *Calderon v. Coleman*, 525 U.S. 141, 146 (1998). A habeas

9  petitioner is not entitled to relief, however, unless that error "'had substantial and

10  injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*,

11  507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776

12  (1946)).

13        b. <u>Sub-Claim (a)</u>: Failure to Instruct on Lesser-Included Offense

14        Petitioner argues his due process rights were violated when the trial court failed

15  to sua sponte instruct the jury on the lesser-included offense of simple battery.

16  Although this claim was never presented to the California Supreme Court, it was raised

17  in the California Court of Appeal.  (Lodgment No. 4.)  In its opinion, the appellate

18  court did directly discuss Petitioner's due process claim, but it held that Petitioner was

19  not entitled to relief on his instructional error claim.  The court found that the failure

20  to sua sponte instruct on the lesser included offense of battery was error under *state* law

21  because Petitioner's defense was, in part, that the substance he threw was only water,

22  and not urine. (Lodgment No. 7 at 4-5.)

23        The Ninth Circuit has stated that "the failure . . . to instruct on lesser included

24  offenses in a non-capital case does not present a federal constitutional question."

25  *Windham v. Merkle*, 163 F.3d 1092, 1105-06 (9th Cir. 1998); *see also Bashor v. Risley*,

26  730 F.2d 1228, 1240 (9th Cir. 1984); *Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000)

27  (per curiam) (in non-capital case, failure of state court to instruct on lesser included

28  offense does not alone present a federal constitutional question cognizable in a federal

1  habeas corpus proceeding). Furthermore, because there is no Supreme Court authority

2  holding that the Constitution entitles a defendant in a non-capital case to jury

3  instructions on lesser included offenses, the state court's denial of the claim could not

4  have been unreasonable. *See Beck v. Alabama*, 447 U.S. 625, 638 n. 14 (1980); *Howell*

5  *v. Mississippi*, 543 U.S. 440, 445 (2005); *Knowles v. Mirzayance*, 556 U.S. 111, 122

6  (2009) ("[T]his Court has held on numerous occasions that it is not an unreasonable

7  application of clearly established Federal law for a state court to decline to apply a

8  specific legal rule that has not been squarely established by this Court.") (internal

9  quotation omitted); *see also United States v. Rivera-Alonzo*, 584 F.3d 829, 834 n. 3 (9th

10  Cir. 2009) ("In the context of a habeas corpus review of a state court conviction, we

11  have stated that there is no clearly established federal constitutional right to lesser

12  included instructions in non-capital cases."). Accordingly, the state court's denial of

13  Petitioner's claim was neither contrary to, nor an unreasonable application of, clearly

14  established federal law.  *See Williams*, 529 U.S. at 409.

15      Second, although "the defendant's right to adequate jury instructions on his or

16  her theory of the case might, in some cases, constitute an exception to the [foregoing]

17  general rule," *Solis*, 219 F.3d at 929, Petitioner's is not such a case. A state court's jury

18  instruction may violate due process if it denies the defendant "a meaningful opportunity

19  to present a complete defense." *See Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006)

20  Here, Petitioner was able to present his defense, which was (in part) that the substance

21  he threw was pure water.  He testified that he had thrown only water and he cross-

22  examined the criminalist regarding her inconclusive findings as to the nature of the

23  substance. (Lodgment No 3, vol. 4 at 350-54.)  Petitioner argued to the jury that an

24  element of the offense was not met and he should be acquitted. (*See* Lodgment No. 3,

25  vol. 4 at 424-25.) He was not denied a meaningful opportunity to present his defense.

26      Finally, Petitioner is precluded from federal habeas relief on his instructional

27  error claim because any error resulting from the failure to instruct on the lesser

28  included offense of simple battery did not have a "substantial and injurious effect or

influence" on the jury's verdict. *See Brecht*, 507 U.S. at 623; *Fry v. Pliler*, 551 U.S. 112, 120 (2007); *see also Bradley*, 315 F.3d at 1099 (failure to instruct on theory of defense is trial error subject to harmless error analysis). The jury was instructed that it must find beyond a reasonable doubt that the substance was a bodily fluid or a mixture of bodily fluid. (*See* Lodgment No. 1, vol. 2 at 131, 151.) By finding Petitioner guilty, the jury necessarily rejected Petitioner's argument that the substance was water. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (stating that a jury is presumed to follow the judge's instructions). Petitioner therefore has not established prejudice.

In sum, the Court finds Petitioner has failed to state a cognizable claim in his sub-claim regarding jury instructions on lesser included offenses. Moreover, the state court's denial of the claim was neither contrary to, nor an unreasonable application of clearly established law. *Williams*, 529 U.S. at 412-13. Lastly, even assuming error, Petitioner has not established prejudice. *See Brecht*, 507 U.S. at 623. The Court therefore **RECOMMENDS** that claim one, sub-claim (a) be **DENIED**.

### c. Sub-Claim (b): Failure to Modify CALCRIM 2722

Petitioner claims the standard instruction for battery by gassing should have been modified to include reference to "battery" and/or "aggravated battery." The Court must conduct an independent review of the record to determine whether the state court's denial of the claim was contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Himes*, 336 F.3d at 853.

At Petitioner's trial, the jury was instructed under California Criminal Jury Instructions (CALCRIM) Number 2722, as follows:

The defendant is charged with battery by gassing.

To prove that the defendant is guilty of this crime, the People must prove that:

1. The defendant was confined in a local detention facility

2. While so confined, the defendant intentionally

committed an act of gassing, that is, he placed or threw human urine or a mixture containing human bodily substances on a body of a peace officer/an employee of a local detention facility;

AND

3. The urine or mixture actually made contact with the skin of a peace officer/an employee of a local detention facility.

A county jail is a local detention facility.

A sworn member of the San Diego Sheriff's Department is a peace officer.

(Lodgment No. 1, vol. 2 at 151; *see also* CALCRIM No. 2722 (2006).) The instruction tracked the language of California Penal Code section 243.9, which states:

(a) Every person confined in any local detention facility who commits a battery by gassing upon the person of any peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, or employee of the local detention facility is guilty of aggravated battery and shall be punished by imprisonment in a county jail or by imprisonment in the state prison for two, three, or four years.

(b) For purposes of this section, "gassing" means intentionally placing or throwing, or causing to be placed or thrown, upon the person of another, any human excrement or other bodily fluids or bodily substances or any mixture containing human excrement or other bodily fluids or bodily substances that results in actual contact with the person's skin or membranes.

Cal. Penal Code §243.9(a)-(b). That the instruction refers to an "act of gassing" while section 243(a) uses the term "battery by gassing" does not alter the essential elements of the offense. "Gassing" was defined for the jury pursuant to the language contained in Penal Code section 243.9(b). The jury was required to find, beyond a reasonable doubt, that Petitioner intentionally threw the substance, that the substance was a bodily fluid or mixture of bodily fluid (in this case urine), and that the substance came into actual contact with Deputy Valente's skin. (*See* Lodgment No. 1, vol. 2 at 131; *see also id.* at 151.) "Battery" or "aggravated battery" are not necessary elements of the offense. Thus, because the jury was properly instructed on the elements of the offense, Petitioner has not shown that his due process rights were violated by the omission of "battery" or "aggravated battery" from the standard instruction pursuant to CALCRIM

1  2722.  *See Estelle*, 502 U.S. at 71-72.  Moreover, Petitioner has not shown the denial

2  of his claim was contrary to, or an unreasonable application of clearly established law.

3  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Thus, the Court **RECOMMENDS**

4  that claim one, sub-claim (b) be **DENIED**.

5              *(3)*  *Miranda* Violation

6       In his second claim, Petitioner argues his Fifth Amendment right against self

7  incrimination was violated.  He claims that statements he made to Deputy Alston

8  regarding the incident should not have been admitted at trial because he made the

9  statements without having been advised of his *Miranda* rights. (Pet. at 12-14.)

10       At trial, Petitioner moved to have his statements to Deputy Alston and also a

11  letter of apology Deputy Alston purportedly had him write to nurse Marquez,

12  suppressed under *Miranda*. (Lodgment No. 3, vol. 4 at 215.)  After argument, the trial

13  court granted the motion, concluding that Deputy Alston had interrogated Petitioner

14  while he was in custody, without advising him of his *Miranda* rights. (*See id.* at 226.)

15  After the trial court granted Petitioner's motion, the following exchange occurred:

16  THE COURT:       Okay.  All right. Any statements that – as it stands
                     right now, any statements that you made to him at that
17                   time, that should include this [letter of apology] – just
                     because it's written doesn't change its character –
18
    [PETITIONER]:    Okay.
19
    THE COURT:       – that were given to that deputy at that particular time,
20                   those are suppressed.  At least they don't come out in
                     the – in the people's case in chief.
21
                     Now, that doesn't mean if you testify in this case –
22                   and you said you're going to testify.  If you do, you
                     may open the door to those statements coming in to
23                   impeach your testimony.

24  [PETITIONER]:    Okay.

25  THE COURT:       Because just because you weren't given a *Miranda*
                     warning doesn't mean they were coerced, and that's
26                   what we call involuntary.   There's a difference
                     between a *Miranda* statement that's defective for
27                   *Miranda* purposes and something that is defective
                     because it's involuntary; in other words, it was beaten
28                   out of you, for example.

| | | |
|---|---|---|
| [PETITIONER]: | Uh-huh. |
| THE COURT: | If something was beaten out of you, they can't use that for anything, they can't impeach you with it, they can't present it for any reason. |
| | But the defect in the statement is because they didn't give you a *Miranda* warning, that means that they can't use it affirmatively against you, but they can use it to impeach you, in the event that you testify; if something that you said during that particular encounter with the deputy impeaches some topic that you talked about in terms of your testimony, it would come in. |
| [PETITIONER]: | Okay. |
| THE COURT: | Okay. And that is – that's that. That's the one. |
| [PETITIONER]: | So you ruled on this, right? |
| THE COURT: | Yeah. I just ruled on that. |
| [PETITIONER]: | And it's excluded, right. |
| THE COURT: | It's excluded right now. It's excluded, but Ms. Kaplan is going to have a chance to, you know, do her legal wizardry over the evening. |
| [PETITIONER]: | Okay. |

(Lodgment No. 3, vol. 4 at 225-27.) The next day, the prosecutor again argued that the statements were admissible, citing additional authority. The trial court declined to reconsider the ruling, stating "The statements will remain excluded except for purposes of impeachment in the event that the defendant testifies." (*Id.* at 247.)

Petitioner testified in his own defense. He stated that he got in an argument with the deputy, got mad and threw a milk carton containing water on the nurse. He testified that there was no urine or bodily fluid in the carton. (*Id.* at 389-90.) On cross-examination, the prosecutor asked about the incident:

| | | |
|---|---|---|
| PROSECUTOR: | And because you were upset, you threw something on Deputy Valente and Nurse Marquez? |
| [PETITIONER]: | No. I threw something on Nurse Marquez, which was water. |
| Q: | So it was not urine? |

| | | |
|---|---|---|
| A: | | No. I was waiting for my pill – pill call, my pills, and I had a milk carton full of water. |
| Q: | | How many? |
| A: | | Just one milk carton full of water. |
| Q: | | There was never a second one that you threw at them? |
| A: | | No. |
| Q: | | Just one? |
| A: | | Yes. |
| PROSECUTOR: | | Your Honor, the issue we discussed previously – I think the door has been opened for impeachment. |
| THE COURT: | | Question by question, and it's only impeachable stuff. |
| Q: | | [Petitioner], had you been saving a mixture of urine and water in a cup for a while? |
| A: | | No. |
| PROSECUTOR: | | Your Honor – |
| THE COURT: | | Well, I think you can ask the next question. |
| PROSECUTOR: | | Did you ever tell anyone that you had been saving a mixture of urine and water in a cup for a while? |
| [PETITIONER]: | | No. |
| Q: | | Do you remember telling Detective Larry Alston that you had been saving a cup of urine and water for a while. |
| A: | | No. |
| Q: | | Did – Did you tell him, "I've been saving urine and water in a cup for a while"? |
| A: | | No. |

(Lodgment No. 3, vol. 4 at 390-91.) On rebuttal, the prosecution called Deputy Alston as a witness, who testified that Petitioner told him he had been saving urine and water in a cup for a while. (*Id.* at 394-95.)

It is clearly established that suspects in custody must be apprised of various constitutional rights before they may be interrogated. *Miranda v. Arizona*, 384 U.S.

at 444, 467, 476-77; *see also Missouri v. Seibert*, 542 U.S. 600, 608 (2004). If a suspect is not advised of his *Miranda* rights prior to a custodial interrogation, any statements he makes during the interrogation, whether inculpatory or exculpatory, may be excluded from evidence. *Miranda*, 384 U.S. at 444, 476-77; *see also Rhode Island v. Innis*, 446 U.S. 291, 301 n. 5 (1980).

However, such a statement, if voluntary, may be used for impeachment in the event the defendant testifies inconsistently. *See Harris v. New York*, 401 U.S. 222, 224-26 (1971). "If a defendant exercises his right to testify on his own behalf, he assumes a reciprocal 'obligation to speak truthfully and accurately.'" *Michigan v. Harvey*, 494 U.S. 344, 351 (1990) (*quoting Harris*, 401 U.S. at 225). The Supreme Court has consistently rejected arguments that would allow a defendant to "turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths." *Id.* (quoting *Harris*, 401 U.S. at 224). If the statement was procured such that it was involuntary, however, then the statement is excluded for all purposes. *Michigan v. Harvey*, 494 U.S. 344, 351 (1990); *Henry v. Kernan*, 197 F.3d 1021, 1029 (9th Cir. 1999).

Accordingly, there are only "two important limitations" on the impeachment of a defendant with prior inconsistent statements obtained in violation of *Miranda*. *See United States v. Gomez*, 725 F.3d 1121, 1126 (9th Cir. 2013). The statement must have been voluntary. *See United States v. Makhlouta*, 790 F.2d 1400, 1404 (9th Cir. 1986). And the statement must be " arguably " inconsistent with the defendant's testimony at trial. *See id.* First, Petitioner makes no argument that his statements were involuntary. Moreover, the trial court reasonably concluded that the statements were not coerced. (Lodgment No. 3, vol. 4 at 226.)

Second, Petitioner testified in his own defense that the liquid thrown was water, that he had not been saving a mixture of urine and water, and that he had not told Deputy Alston as much. Petitioner's trial testimony was entirely inconsistent with his

1  statements to Deputy Alston – that he had been saving urine and water in a cup for a

2  while. (*See id.* at 390-91, 394-95.) Because the statements were voluntary and

3  inconsistent with Petitioner's testimony, they were properly admitted as impeachment

4  evidence. *See Gomez*, 725 F.3d at 1126.

5      Petitioner appears to argue that the prosecutor violated the trial court's ruling by

6  calling Deputy Alston to testify. (*See* Pet. at 29.) As discussed above, however, the

7  trial court explained that the statements were inadmissible in the prosecution's case in

8  chief, but warned Petitioner that they could be used to impeach his testimony if he

9  opened the door. (Lodgment No. 3, vol. 4 at 225-27.) Petitioner did just that when he

10  testified that he had not told Deputy Alston that he had saved water and urine in the

11  milk carton.

12      Petitioner has not shown his Fifth Amendment rights were violated by the

13  admission of the statements to impeach his testimony. *See Michigan*, 494 U.S. 344,

14  *see also Pirtle*, 313 F.3d at 1167. The Court therefore **RECOMMENDS** that claim

15  two be **DENIED**.

16            *(4)    Right to Present a Defense and Cross Examine Witnesses*

17      In claim three, Petitioner argues his Sixth Amendment right to confront

18  witnesses against him and his right to present witnesses in his defense was violated.[7]

19  (Pet. at 18-19.) Specifically, he also argues he was prevented from subpoenaing

20  witnesses and evidence for his defense. He also argues he was deprived of his right to

21  cross-examine Deputy Valente after a videotape of the incident was introduced as

22  evidence. (*See* Pet. at 43.) As discussed above, this claim must be reviewed de novo

23  because there is no state court decision to which this Court can defer. *See Pirtle*, 313

24  F.3d at 1167.

25            a. Background

26      On January 27, 2010, the day the trial was set to begin, Petitioner informed the

27  court that he had several witnesses he planned to call. He named Deputy Taguacta,

28

---

[7]In the Petition, this claim is presented as "ground four." (*See* Pet at 18.)

1   Deputy Abril, Deputy Kane, Deputy Johnson, Deputy Carranza, Sergeant Sotomeza,

2   Sergeant Reed, Sergeant Lewchesky, Deputy Larry Alston, Jennifer Marquez, Deputy

3   John Valente, inmate Jason Weissinge, inmate David Cataldo, inmate Jose Garcia, and

4   inmate Robert Carson. (*See* Lodgment No. 3, vol. 4 at 207-08.) The prosecutor

5   indicated that other than Marquez, Valente and Alston, who had been subpoenaed by

6   the state, she had not heard of any of Petitioner's witnesses and had received no

7   statements from any of the proposed witnesses.  Petitioner explained that he had not

8   been in contact with any of the individuals on his witness list, but that they had all been

9   subpoenaed. (*Id.* at 208.)

10       The trial court informed Petitioner that, in preparing the necessary orders to

11   produce his inmate witnesses, the clerk had discovered that inmate Weissinge had been

12   paroled and therefore, although he had been subpoenaed, there was no way for the

13   court to locate him.  In addition, inmate Garcia could not be located with the booking

14   number Petitioner had provided the court. (*Id.* at 242.)

15       Petitioner also mentioned seeking a videotape recording of the incident and

16   indicated that he had subpoenaed it but had not received it.  Petitioner and the trial

17   judge had the following discussion:

18       [PETITIONER]:    Also I want to add to [my motion to admit evidence].
I want to subpoena a video – two video cameras that,
19                         you know, I wanted to put with this motion, and I
hope I can admit the video cameras – the video
20                         camera of the incident.

21       THE COURT:      What video camera?

22       [PETITIONER]:    They recorded the whole incident. The had a – they
got a surveillance camera in the module, and it's – it
23                         points right to my cell –

24       THE COURT:      Yeah.

25       [PETITIONER]:    – and it recorded everything that went down.

26       THE COURT:      Did you subpoena that before today?

27       [PETITIONER]:    It's on the subpoena right here to William Gore of the
Sheriff's Department.
28

(Lodgment No. 3, vol. 4 at 228.)

The next day, before jury selection began, the prosecutor noted that the Sheriff's Department was looking for the videotape of the incident, but that it would take a few days to find it.

| | |
|---|---|
| THE COURT: | They're looking for the tape? They don't know if it exists, but if it does, it's going to take awhile to find it? |
| MS. KAPLAN: | Correct. |
| [PETITIONER]: | Well, the tape – it's a requirement that prisons – or jails keep a hold for one year before they destroy it, so they should have it. |
| THE COURT: | Yeah.  Maybe they will, maybe they won't. I don't know.  I haven't seen a subpoena for the tape, and I haven't seen that they've failed to comply with it. I don't know that it was asked for or requested in a timely fashion. |
| [PETITIONER]: | Yeah. I mean, I subpoenaed for it, but I can't say it's a timing matter because they took me through some loopholes to issue the subpoena to get it. I showed you yesterday I wanted to file a motion to admit that as evidence, but you said I had to get the tape first. |
| THE COURT: | I can't admit something into evidence you don't have. |

(*Id.* at 269-70.)  The next morning, January 29, 2010, before opening statements, Petitioner again asked the court for assistance in obtaining the videotape, stating his subpoenas had been rejected by the Sheriff's department as defective. He also asked the judge to sign a subpoena for Deputy Johnson.

| | |
|---|---|
| [PETITIONER]: | This person Stanford Toyan tells me my subpoenas [are] ineffective because I can't sign it because I'm not authorized to sign it . . . . It says here either you, the judge, or the investigator [has] to sign the subpoena. |
| THE COURT: | Yeah. So what are you asking? |
| [PETITIONER]: | I'm asking can you sign the subpoena so I can serve it to get the video camera – I mean the tape I need and serve the witnesses. |
| THE COURT: | Let me see the subpoena.  Do you have a filled out subpoena that you want me to sign? |
| [PETITIONER]: | Well, I was hoping I could do it later on today because I was going to have – I was going to ask you would it be okay to fill it out and give it to you later on today? |

| | | |
|---|---|---|
| 1 | THE COURT: | Well, when is it that you think that this evidence is going to be produced? If I sign the subpoena right this minute – and that is going to be for what person to serve what and when? |
| 2 | | |
| 3 | | |
| 4 | [PETITIONER]: | Well, right now, I only got one thing I want to get out of the way, is the tape, and I want to subpoena that. |
| 5 | THE COURT: | Let me see the letter you've got that says you can't issue the subpoena. |
| 6 | | |
| 7 | | (Short Pause.) |
| | THE COURT: | I've read Mr. Toyan's letter, and it looks like he might even be here.  No? |
| 8 | | |
| 9 | | Anyway, I've read the letter.  It says that he's written you three times, telling you that you need to get the proper subpoenas if you want Sheriff's employees to be witnesses.  It sounds like you're less interested in the Sheriff's deputies than you are with the subpoena for the videotape. |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | [PETITIONER]: | Yeah, Yeah.  But, see, he's – that Penal Code, it got to be signed by an investigator or the judge so I just filled this – this one and – |
| 14 | | |
| 15 | THE COURT: | Tell me exactly what you want. |
| 16 | [PETITIONER]: | I want the surveillance video and the camcorder video of July 9 of 2009 of the incident that shows – |
| 17 | THE COURT: | You want a subpoena for that? |
| 18 | [PETITIONER]: | Yeah. |
| 19 | THE COURT: | Any others? |
| 20 | [PETITIONER]: | And this one person right here. |
| 21 | THE COURT: | Who is that? |
| 22 | [PETITIONER]: | [Deputy] M. Johnson. |
| 23 | THE COURT: | [Addressing the prosecutor] Is he on your list? |
| 24 | MS. KAPLAN: | No. |
| 25 | THE COURT: | [Addressing Petitioner] And why is it that your investigator didn't – |
| 26 | | |
| 27 | [PETITIONER]: | Because this letter just came to me – and all my subpoenas that I sent out for proof of service were signed by me.  This is signed by me, and here's the proof of service. He served them, but that letter came and says I can't serve them with my signature on it. |
| 28 | | |

| | | |
|---|---|---|
| THE COURT: | You served them? How did you serve them. |
| [PETITIONER]: | I mean, I signed it, and my investigator went out and served them. |
| THE COURT: | Right. |
| [PETITIONER]: | Okay. But that person is saying I can't sign this. |
| THE COURT: | That's right. That's what this person is saying, is the subpoenas are invalid. |
| [PETITIONER]: | Yeah. So I'm asking you to sign it so my investigator can go out and serve them. |
| THE COURT: | Is you investigator here? |
| [PETITIONER]: | Naw, he's not here. I got to call him up, because that letter just came and he's just now telling me – |
| THE COURT: | The letter is dated January 20th and today is the 29th of January. |
| [PETITIONER]: | Somehow my mail is coming late and I'm just receiving that. |
| THE COURT: | [Addressing the clerk] Well, do we have any blank subpoenas? |

(Lodgment No. 3, vol. 4 at 277-80.)

Thereafter, the trial judge addressed the prosecutor regarding the tape. He noted that if such a tape existed and was exculpatory, the fact that the prosecutor had not produced it would be problem under *Brady v. Maryland*, 373 U.S. 83 (1963), stating:

| | |
|---|---|
| THE COURT: | If there's such a tape, it's highly relevant in this case and it's something that needs to be – needs to be received. |
| | Nobody is going to move heaven and earth for the defendant. They're more likely to do a more expeditious search when your office is using it's persuasive powers to get something like that. . . . |
| | So what I need – well I don't need anything, but my strong suggestion is that you do something with your investigator or your I.S. or whatever support personnel you have to track down the existence of the videotape for this date that shows anything. If it's there, you need to get it, because if it's in existence, it's somewhere and somebody can find it. |
| | [Addressing Defendant] As far as the – I'll sign the subpoena for Deputy Johnson. You get it served. It's |

> not timely, and I don't know if you're going to get it served in time for this trial or not. And if you don't, that's not my fault, that's your fault.
>
> We went over this at the very beginning of the trial. You are charged with the responsibility of knowing all the rules and following all the rules and doing everything right, and if you can't do it – and I warned you that you probably weren't going to be able to do it – then you know, it's – sorry.

[PETITIONER]:   Okay. I have –

THE COURT:   I've done as much as – I mean I'll sign the – this subpoena is overbroad, I think, with regard to the video – video because you're asking for the Sheriff, and you just want a custodian of records.

> But anyway, I'm signing the one for Deputy Johnson. I'm going to sign the one for the custodian.

(Lodgment No. 3, vol. 4 at 280-82.)

Later that afternoon, the prosecutor informed the court that the video had been located. (Lodgment No. 3, vol. 4 at 356.)   By that time, the prosecution's witnesses, Marquez, Valente and Rebekah Neyhart (the criminalist who tested the clothing for urine) had already testified, and had been cross-examined by Petitioner. After reviewing the tape, the prosecutor informed the court she would be presenting the videotape to the jury, and then resting. (*Id.* at 363.) The court asked Petitioner if he had any objection to the tape being admitted into evidence and he responded, "No." (*Id.* at 364.)

The prosecutor then re-called Marquez so that she could authenticate the videotape before it was entered into evidence.   Marquez testified that the video depicted her and Deputy Valente, and was an accurate reflection of the events of July 9, 2009. (*Id.* at 368.) Petitioner cross-examined Marquez, playing the videotape again, and asked her about the specific instant when Petitioner threw the urine at her. (*Id.* at 371-72.) Petitioner then presented his case. He testified on his own behalf, and called inmate Robert Carson and inmate David Cataldo as witnesses. (*Id.* at 374-76, 381-84.)

/ / /

/ / /

b. <u>Sub-Claim (a)</u>: Right to Present a Defense

Petitioner argues that he was prevented from subpoenaing witnesses, and that the trial court failed to comply with state law regarding service of subpeonas, depriving him of an opportunity to present witnesses in his favor, in violation of his Sixth Amendment rights. (*See e.g.*, Pet. at 42-43.)

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal proceedings, the accused shall enjoy the right . . . to be confronted with the witnesses against him [and] to have compulsory process for obtaining witnesses in his favor . . . ." U.S. Const. amend. VI.   In discussing the Sixth Amendment, the Supreme Court has stated that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the [factfinder] so it may decide where the truth lies. . . . This right is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Ponte v. Real*, 471 U.S. 491, 510 (1985) (quoting *Washington v. Texas*, 388 U.S. at 19).

However, "[a] defendant does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure. Nor does the Constitution require judges to take over chores for a pro se defendant that would normally be attended to by trained counsel as a matter of course." *McKaskle v. Wiggins*, 465 U.S. 168, 183-84 (1984); *see also  Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 162 (2000) ("[T]he trial judge is under no duty to provide personal instruction on courtroom procedure or to perform any legal 'chores' for the defendant that counsel would normally carry out"). Ultimately, "[t]he right of self-representation is not . . . a license not to comply with relevant rules of procedural and substantive law." *Faretta v. California*, 422 U.S. 806, 834 n. 46 (1975).

Here, Petitioner claims he was prevented from subpoenaing witnesses.  He also

1   argues the trial court failed to comply with California Penal Code section 1326, which

2   outlines the procedure for subpoenaing witnesses for criminal proceedings. Among the

3   persons authorized to sign and issue a subpoena under section 1326 are a judge or

4   magistrate, court clerk, district attorney or his or her investigator, public defender or

5   his or her investigator, and the attorney of record for the defendant. *See* Cal. Pen. Code

6   § 1326(a). A criminal defendant representing himself pro per is not among the persons

7   who may sign and issue a subpoena. *See id.* Rather, "the clerk of the court in which

8   a criminal action is to be tried" may sign and issue subpoenas and "shall, at any time,

9   upon application of the defendant, and without charge, issue as many blank subpoenas,

10  subscribed by him or her, for witnesses in the state, as the defendant may require." Cal.

11  Penal Code §1326(a)(3); *see also People v. King*, 2012 WL 234359, *1, fn. 1 (Cal.

12  App. 2d Dist., 2012).

13      Petitioner acknowledged to the trial court that his subpoenas were defective

14  because he had signed them. He had received at least three letters from the Sheriff's

15  Department, prior to trial, advising him that his subpoenas were invalid and that they

16  must be signed by the court. (*See* Lodgment No. 3, vol. 4 at 278-79; *see also* Pet. at

17  Ex., R (letter dated Jan. 20, 2010).) The trial court is not responsible for Petitioner's

18  failure to get his subpoenas signed by the proper authority. As a pro per, Petitioner is

19  required to comply with the procedural rules. *See Faretta*, 422 U.S. at 834 n. 46.

20      Moreover, the trial judge demonstrated considerable patience and fairness toward

21  Petitioner. Originally, Petitioner informed the court that he had subpoenaed the

22  witnesses and the videotape. (Lodgment No. 3, vol. 4 at 208, 228, 270.) It was not

23  until the trial had begun, after the jury had been impaneled, that Petitioner explained

24  that his subpoenas had been rejected. The judge then signed the subpoena for Deputy

25  Johnson, although he noted that it may be untimely.[8] Petitioner did not ask that any

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [8] Under California Penal Code section 1328(d), if a subpoena is served on the superior of a law
27  enforcement officer or his or her agent, the superior or agent may refuse to accept service if that person
    knows that he or she does not have enough time to deliver a copy of the subpoena to the subpoenaed
28  officer. Under section 1328(e), if a subpoena is served on the superior less than five working days
    before the date of the hearing, the superior may refuse to accept service if he or she is not reasonable

1   other witness subpoenas be signed.  The trial judge also strongly encouraged the

2   district attorney to assist in expediting the search for the videotape Petitioner sought.

3   Indeed, the videotape was located and a copy turned over to Petitioner later that same

4   day.  Accordingly, the trial court did not deny Petitioner an opportunity to call

5   witnesses or present a defense. *See McKaskle*, 465 U.S. at 183-84.

6          Furthermore, even assuming Petitioner had been prevented from calling Deputy

7   Johnson, and other witnesses he initially listed before the trial, and assuming such

8   denial amounted to a constitutional violation, Petitioner would not be entitled to habeas

9   relief because he has not shown prejudice. *See Brecht*, 507 U.S. at 637; *Jackson v.*

10  *Nevada*, 688 F.3d 1091, 1104 (9th Cir. 2012).  Petitioner has offered no evidence that

11  Deputy Johnson's testimony or the testimony of any other witness he claims he was

12  prevented from calling, would have been relevant or favorable to his defense.  There

13  is nothing in the record to suggest that had Deputy Johnson testified, it would have cast

14  any doubt on the verdict.  Accordingly, Petitioner has not shown the that his inability

15  to call Deputy Johnson, or any other witness he failed to subpoena, had a substantial

16  injurious effect or influence on the jury's verdict. *See Brecht*, 507 U.S. at 637; *see also*

17  *Fry*, 551 U.S. at 121-22.  The Court therefore **RECOMMENDS** that this sub-claim be

18  **DENIED**.

19                    c. Sub-Claim (b): Right to Cross-Examine Deputy Valente

20         Petitioner also claims he was denied his right to cross-examine Deputy Valente

21  to testify after the videotape was introduced and played for the jury. (*See* Pet. at 43.)

22  The Sixth Amendment's Confrontation Clause, which provides that in criminal cases

23  the accused has the right to "be confronted with witnesses against him." U.S. Const.

24  amend. VI. This right includes the right of cross-examination. *See, e.g., Davis v.*

25  *Alaska*, 415 U.S. 308, 315 (1974); *United States v. Medjuck*, 156 F.3d 916, 919 n. 1

26  (9th Cir. 1998) (citation omitted).  The Confrontation Clause does not prevent a trial

27  judge from imposing reasonable limits on cross-examination based on concerns of

28  certain that service may be completed. Cal. Penal Code §1328(e).

1   harassment, prejudice, confusion of issues, witness safety or interrogation that is

2   repetitive or only marginally relevant. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679

3   (1986). "A limitation on cross-examination does not violate the Confrontation Clause

4   unless it limits relevant testimony and prejudices the defendant, and denies the jury

5   sufficient information to appraise the biases and motivations of the witness." *United*

6   *States v. Bensimon*, 172 F.3d 1121, 1128 (9th Cir. 1999) (internal quotes omitted).

7   Habeas corpus relief may not be granted based on a Confrontation Clause violation

8   unless the admission of the offending evidence had a substantial and injurious effect

9   or influence in determining the jury's verdict, and only if the petitioner can establish

10  actual prejudice. *Hernandez v. Small*, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing

11  *Brecht*, 507 U.S. at 637).

12      Here, Petitioner has not shown a constitutional violation or that he was

13  prejudiced. First, Petitioner had an opportunity to cross-examine Deputy Valente after

14  he testified. (*See* Lodgment No. 3, vol. 4 at 311-23, 324-27.)  More importantly,

15  nothing in the record suggests Petitioner asked to re-call Deputy Valente after the

16  videotape was admitted into evidence. Furthermore, Petitioner has not suggested what

17  additional testimony he might have sought from Deputy Valente. Marquez had already

18  provided foundation for the videotape and identified herself and Deputy Valente on the

19  tape. Calling Valente to simply authenticate the videotape would have been repetitive.

20  *See Van Arsdall*, 478 U.S. at 679.

21      In addition, Petitioner had no objection to the admission of the videotape.

22  (Lodgment No. 3, vol. 4 at 364.) Further, nothing in Petitioner's cross-examination of

23  Marquez suggested any inconsistency between the events depicted on the videotape,

24  and Deputy Valente's testimony (or Marquez's, for that matter). Indeed, the videotape

25  supported Martinez and Valente's testimony that two cartons were thrown, as opposed

26  to one, as Petitioner had testified. (*See id.* at 390-91.) Thus, Petitioner has not shown

27  how his purported inability to recall Deputy Valente had a substantial injurious effect

28  on the verdict. *See Brecht*, 507 U.S. at 637.

1    In sum, Petitioner has not shown his Sixth Amendment right to cross-examine

2    witnesses was violated.   *See Bensimon*, 172 F.3d at 1128.  Even assuming there was

3    a constitutional violation, Petitioner has not shown prejudice. *See Brecht*, 507 U.S. at

4    637.  Therefore, the Court **RECOMMENDS** that the sub-claim be **DENIED**.

5                *(5)    Petitioner's Other Claims*

6        As discussed above, Petitioner listed six grounds for relief in his Petition.  In

7    Petitioner's "Claim Three," he claimed that his jury instruction claims and his *Miranda*

8    claim were exhausted.  Petitioner's argument is discussed in section III(A) of this

9    Report and Recommendation.

10       In his "Claim Five," Petitioner argues that he is entitled to a new trial based on

11   the   alleged errors discussed above in sections III(C)(2)-(4) of this Report and

12   Recommendation.  In his "Claim Six," Petitioner argues that the state court's denial of

13   the claims involved an unreasonable application of clearly established law.  The Court

14   finds these arguments without merit for the reasons discussed above in sections

15   III(C)(2)-(4) of this Report and Recommendation.

16               *(6)    Request for Evidentiary Hearing*

17       In his Traverse and First Supplemental Traverse, Petitioner requests an

18   evidentiary hearing. (Traverse at 3; *see also* First Supp. Traverse at 8. ) )  Evidentiary

19   hearings in 28 U.S.C. § 2254 cases are governed by AEDPA, which "substantially

20   restricts the district court's discretion to grant an evidentiary hearing." *Baja v.*

21   *Ducharme*, 187 F.3d 1075, 1077 (9th Cir. 1999).  The provisions of 28 U.S.C.

22   § 2254(e)(2) control this decision:

23           (2) If the applicant has failed to develop the factual basis of a claim
             in State court proceedings, the court shall not hold an evidentiary hearing
24           on the claim unless the applicant shows that –

25           (A) the claim relies on –

26               (i) a new rule of constitutional law, made retroactive
                 to cases on collateral review by the Supreme Court, that was
27               previously unavailable; or

28               (ii) a factual predicate that could not have been

previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.A. § 2254(e)(2) (West 2006).

In order to determine whether to grant an evidentiary hearing, the court must first "determine whether a factual basis exists in the record to support the petitioner's claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 669 (9th Cir. 2005) (citing *Baja*, 187 F.3d at 1078). If not, the court must "ascertain whether the petitioner has 'failed to develop the factual basis of the claim in State court.'" *Id.* at 669-70. A failure to develop the factual basis of a claim in state court implies "some lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *See Williams v. Taylor*, 529 U.S. 420, 432 (2000). The Supreme Court has said that "[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437.

In the present case, a sufficient factual basis exists in the trial transcripts and other records before the Court to resolve the merits of Petitioner's claims. *See Insyxiengmay*, 403 F.3d at 669-70. Accordingly, the request for an evidentiary hearing is denied.

## III.   CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Anthony J. Battaglia under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and, (2) denying the Second Amended Petition (ECF No. 16).

/ / /

/ / /

1    **IT IS HEREBY ORDERED** that no later than <u>**30 days from issuance of this**</u>
2    <u>**Report and Recommendation,**</u> any party to this action may file written objections
3    with the Court and serve a copy on all parties.  The document should be captioned
4    "Objections to Report and Recommendation."
5    **IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed
6    with the Court and served on all parties no later than <u>**10 days after being served with**</u>
7    <u>**the objections**</u>. The parties are advised that failure to file objections within the
8    specified time may waive the right to raise those objections on appeal of the Court's
9    Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951
10   F.2d 1153, 1157 (9th Cir. 1991).
11   DATED: May___7___, 2014

14   KAREN S. CRAWFORD
15   United States Magistrate Judge